Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| MARGARITA FERNÁNDEZ ZAVALA<br><br><br>*EX PARTE*<br><br>KLCE202500205<br><br>***MARIS STELLA ARRATIA BONELL***<br><br>Peticionaria | *Certiorari*<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala<br>Superior de San Juan<br><br>Caso Núm.:<br>SJ2019CV02096 (202)<br><br>Sobre:<br>Cartas Testamentarias |
|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a <u>30</u> de abril de 2025.

Comparece ante nos, la señora Maris Stella Arratia Bonell (señora Arratia o peticionaria) mediante recurso de *Certiorari* presentado el 28 de febrero de 2025, y nos solicita que revoquemos la *Orden* emitida el 14 de enero de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). En dicha *Orden*, el TPI denegó su solicitud de intervención en una acción *ex parte* para requerir la expedición de unas cartas testamentarias.

Por los fundamentos que detallamos a continuación, ***desestimamos*** el recurso por carecer de jurisdicción, ante su presentación tardía.

### I.

El 4 de marzo de 2019, la señora Margarita Fernández Zavala (señora Fernández o albacea) instó el procedimiento de jurisdicción voluntaria para la expedición de las cartas testamentarias a su favor, esto, con el fin de acreditar su autoridad y capacidad como Albacea Testamentaria de Myrna Báez González (causante), quien falleció el 24 de septiembre de 2018[1]. El 6 de marzo de 2019, el TPI

---

[1] Apéndice, pág. 52.

Número Identificador

RES2025_____

emitió y notificó una *Resolución* en la cual expidió cartas testamentarias a favor de la señora Fernández.

Surge de dicha determinación, que el TPI concedió lo solicitado luego de cerciorarse de que se hubiesen cumplido con todos los requisitos de ley. Según acreditó en la *Resolución* en cuestión: (1) el causante otorgó testamento abierto mediante escritura pública y designó a la señora Fernández como albacea testamentaria sin prestación de fianza ni límite de tiempo; (2) la mencionada escritura fue inscrita en el Registro de Testamentos del Tribunal Supremo de Puerto Rico; (3) la petición radicada por la señora Fernández fue debidamente juramentada, y (4) adjuntó a su petición los siguientes documentos: (a) certificado de defunción del causante, (b) copia certificada del testamento, (c) certificación del Registro de Testamentos que acredita la inscripción y vigencia a la fecha de la muerte del testador, (d) copia de la Aceptación y Juramento al Cargo de Albacea de 23 de octubre de 2018 ante notario, y (e) certificación notarial dando fe de haber archivado la aceptación juramentada del cargo de albacea.

Así las cosas, el foro primario acogió la petición y expidió las cartas testamentarias a favor de la señora Fernández. De tal manera, reconoció su autoridad para desempeñar el cargo de albacea testamentario y, en cuanto no sea incompatible con la ley, tome posesión del caudal relicto de la causante y desempeñe todas las gestiones legales encomendadas, a los fines de asumir la representación, la administración y la custodia de dichos bienes hasta la conclusión de los procedimientos que culminen en la distribución del haber hereditario de esta, sin la imposición de una fianza por voluntad del causante.

Cinco años más tarde, el 30 de diciembre de 2024, la señora Arratia presentó una moción de intervención ante el TPI, en la cual solicitó formar parte de los procedimientos como interventora, toda

vez que ameritaba vindicar sus derechos como legataria[2]. Alegó que la albacea le ha dejado de informar sobre el estado de los bienes del caudal relicto, que no ha rendido informes trimestrales desde que ostenta su cargo y que, no solo no ha recibido su legado, sino que desconoce el detalle del estado de los bienes del caudal relicto.

No obstante, el 14 de enero de 2025, el TPI emitió la *Orden* recurrida en la cual declaró No Ha Lugar la solicitud de intervención y advirtió a la peticionaria que debía presentar un pleito independiente ordinario[3].

Inconforme, el 28 de enero de 2025, la señora Arratia presentó una reconsideración del dictamen ante el TPI. El 29 de enero de 2025, el foro primario la declaró No Ha Lugar y dispuso: *La solicitud de intervención no es oportuna pues en este caso ya se dictaron las cartas testamentarias.*

Insatisfecha aún, el 28 de febrero de 2025, la peticionaria acudió ante este foro vía recurso de *certiorari* y señaló el siguiente error:

> ERRÓ EL TPI AL DENEGAR A LA RECURRENTE SU DERECHO A INTERVENIR EN EL CASO DE CARTAS TESTAMENTARIAS Y AL DETERMINAR QUE ESTA DEBE RADICAR UN PLEITO CONTENSIOSO.

El 31 de marzo de 2025, la señora Fernández se opuso a la expedición del auto discrecional, ya que el proceso de expedición de cartas testamentarias culminó en el 2019, cuando el foro primario concedió el petitorio y la peticionaria no acudió al foro intermedio.

Analizados los escritos de las partes y el apéndice adjunto, procedemos a resolver.

**II.**

**-A-**

El auto de *certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía

---

[2] *Íd.*, pág. 51.
[3] *Íd.*, págs. 11-12.

puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[4] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[5]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[6]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[7].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[8]. No obstante, la Regla 52.1, *supra*, faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar

---

[4] 32 LPRA Ap. V, R. 52.1.
[5] 4 LPRA Ap. XXII-B, R.40.
[6] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[7] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[8] *García v. Padró,* 165 DPR 324, 334-335 (2005); *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 180 (1992).

la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[9].

[...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[10], para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**-B-**

Nuestro Tribunal Supremo, ha definido la jurisdicción como el poder que ostentan los tribunales para considerar y decidir los casos y las controversias que sean presentados a su atención[11]. Es normativa reiterada que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, es por lo que, los asuntos relativos a la jurisdicción son privilegiados y deben ser atendidos con prontitud[12]. La ausencia de jurisdicción puede ser levantada

---

[9] 32 L.P.R.A. Ap. V, R. 52.1.

[10] 4 LPRA Ap. XXII-B, R. 40.

[11] *Beltrán Cintrón v. ELA*, 204 DPR 89 (2020), *Torres Alvarado v Madera Atiles*, 202 DPR 495 (2019); *SLG Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011).

[12] *Báez Figueroa v. Adm. Corrección*, 209 DPR 288, 298 (2022); *Torres Alvarado v Madera Atiles, supra,* pág. 500; *González v. Mayagüez Resort & Casino,* 176 DPR 848, 856 (2009).

*motu proprio,* ya que, esta incide de forma directa sobre el poder del tribunal para adjudicar una controversia[13].

Una de las instancias en que un tribunal carece de jurisdicción es cuando se presenta un recurso tardío o prematuro. Lo anterior, debido a que, una apelación o recurso prematuro, al igual que uno tardío adolece del grave e insubsanable defecto de falta de jurisdicción[14]. Su presentación carece de eficacia y como consecuencia no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo[15].

Un recurso de revisión tardío es aquel que se presenta fuera del término disponible para ello, y que, consecuentemente, manifiesta la ausencia de jurisdicción. Desestimar un recurso por ser tardío priva fatalmente a la parte de presentarlo nuevamente, ante ese mismo foro, o ante cualquier otro[16]. En cambio, la desestimación de un recurso por prematuro le permite a la parte que recurre volver a presentarlo, una vez el foro apelado resuelve lo que estaba ante su consideración[17].

Por consiguiente, un tribunal no tiene discreción para asumir jurisdicción donde no la hay, si carece de jurisdicción, deberá así declararlo y desestimar la reclamación sin entrar en sus méritos, pues la falta de jurisdicción no es susceptible de ser subsanada[18].

Cónsono con lo anterior, la Regla 83 del Reglamento del Tribunal de Apelaciones[19], confiere facultad a este Tribunal para a

---

[13] *Allied Management Group, Inc. v Oriental Bank,* 204 DPR 374 (2020); *Torres Alvarado v Madera Atiles, supra,* pág. 500; *Ruiz Camilo v. Trafon Group Inc.,* 200 DPR 254, 268 (2018); *Suffront v. A.A.A.,* 164 DPR 663, 674 (2005).
[14] *Báez Figueroa v. Adm. Corrección, supra,* pág. 299; *AFI v. Carrión Marrero,* 209 DPR 1 (2022); *Yumac Home Furniture v. Caguas Lumber Yard,* 194 DPR 96, 107 (2015).
[15] *Báez Figueroa v. Adm. Corrección, supra,* pág. 299; *AFI v. Carrión Marrero, supra,* pág. 4.
[16] *Yumac Home Furniture v. Caguas Lumber Yard, supra,* pág. 107.
[17] *Íd.*
[18] *Yumac Home Furniture v. Caguas Lumber Yard, supra,* pág. 107 *Íd.*; *Autoridad para el Financiamiento de la Infraestructura de Puerto Rico v. Carrión Marrero, supra. Mun. De San Sebastián v. QMC Telecom,* 190 DPR 652, 600 (2014); *Suffront v. AAA, supra,* pág. 674; *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384, 394-395 (2022).
[19] 4 LPRA Ap. XXII-B, R. 83.

iniciativa propia o a petición de parte desestimar un recurso de apelación o denegar un auto discrecional cuando este foro carece de jurisdicción.

Por su parte, la Regla 32 (C) del Reglamento del Tribunal de Apelaciones dispone lo siguiente:

> El recurso de *certiorari* para revisar las resoluciones finales en procedimientos de jurisdicción voluntaria dictadas por el Tribunal de Primera Instancia se formalizará mediante la presentación de una solicitud dentro de los treinta días siguientes a la fecha de archivo en autos de una copia de la notificación de la resolución u orden recurrida. Este término es jurisdiccional[20].

**-C-**

En Puerto Rico hay una distinción entre los asuntos de jurisdicción voluntaria y los de jurisdicción contenciosa[21]. La jurisdicción voluntaria se define como "[a]quella en que no existe controversia entre las partes; la que no requiere la dualidad de las mismas"[22]. En consecuencia, se entiende como "aquel ámbito de asuntos en que, por disposición de ley y a solicitud de los interesados, se requiere la intervención del juez para su tramitación, aun cuando no se promueva controversia alguna entre las partes"[23]. En nuestro ordenamiento procesal, el inciso (b) de la Regla 3.1 de las Reglas de Procedimiento Civil establece que:

> El tribunal tendrá facultad para conocer de los procedimientos de jurisdicción voluntaria. Se podrá acudir al tribunal con un recurso de jurisdicción voluntaria con el fin de consignar y perpetuar un hecho que no sea objeto de una controversia judicial en ese momento y que no pueda resultar en perjuicio de una persona cierta y determinada[24].

De otra parte, el albacea es la persona designada por el testador para ejecutar su última voluntad[25]. En lo aquí pertinente,

---

[20] Regla 32(C) del Reglamento del Tribunal de Apelaciones (4 LPRA Ap. XXII-B). Véase también *Assoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014).
[21] *RPR & BJJ, Ex Parte, supra*, pág. 404.
[22] G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual*, Ed. Heliasta, Tomo V, 1994, pág. 54.
[23] *RPR & BJJ, Ex Parte, supra*, pág. 404.
[24] Regla 3.1(b) de Procedimiento Civil, *supra.*
[25] *Pino Development Corp. v. Registrador,* 133 DPR 373, 389 (1993).

el Artículo 597 del Código Enjuiciamiento Civil de 1933 dispone lo siguiente:

> Todo albacea que acepte el nombramiento hecho a su favor en un testamento deberá entregar al funcionario en cuya oficina se halla protocolado el testamento una aceptación del cargo por escrito, acompañada de un juramento, también por escrito, comprometiéndose a cumplir, del mejor modo que le fuere dable, sus obligaciones como albacea, sin lo cual no podrá hacerse cargo de los bienes del finado. La sala del Tribunal de Primera Instancia de la última residencia del finado o del lugar en que radican sus bienes, mediante la presentación de una certificación del notario u otro funcionario competente, en que conste haberse archivado dicha aceptación y juramento oficial, expedirá cartas testamentarias a favor del albacea, las cuales constituirán prueba de su autoridad. Tan pronto como un administrador haya prestado su fianza y juramento oficial, el juez o tribunal que lo hubiere nombrado expedirá a su favor cartas de administración bajo su sello, en testimonio de su autoridad[26].

En *Vilanova et al. v. Vilanova et al.*, 184 DPR 824 (2012) nuestro alto foro expresó que, en la mayoría de los casos, **el procedimiento para la expedición de las cartas testamentarias es uno de jurisdicción voluntaria, que se tramita en el despacho del juez de primera instancia <u>sin mayores incidentes</u>**[27]. Además, en *RPR & BJJ, Ex Parte*, el Tribunal Supremo reiteró que: "En un caso de jurisdicción voluntaria "no se promueve acción alguna entre partes conocidas y determinadas. Los peticionarios son los únicos interesados en el remedio que se solicita"[28].

Por otra parte, si bien un procedimiento de jurisdicción voluntaria pudiera convertirse en uno contencioso cuando compareciera una parte oponiéndose o pretendiendo un interés adverso, dicho trámite debe llevarse de forma tal que garantice los postulados de la Regla 1 de Procedimiento Civil y debe estar libre de formalismos[29]. **En los casos de cartas testamentarias se ha permitido la oposición de una parte a los únicos efectos de**

---

[26] Artículo 597 del Código Enjuiciamiento Civil de 1933 (32 LPRA sec. 2571).
[27] *Vilanova et. al v. Vilanova et. al*, 184 DPR 824, 858 (2012).
[28] *RPR & BJJ, Ex Parte, supra*, pág. 405, citando a *Rivera v. Corte, supra*, pág. 676.
[29] *RPR & BJJ, Ex Parte, supra*, págs. 405-406.

**impugnar la idoneidad del albacea nombrado**. En esa situación, "lo que procede es convertir el proceso en uno contencioso y seguir el trámite ordinario"[30].

### III.

En síntesis, la peticionaria arguye que erró el TPI al denegarle su solicitud de intervención y advertirle que debía instar un pleito independiente. Esto, por la razón de que, al así fallar, no le permite vindicar sus derechos como legataria, toda vez que, según alega en su recurso, la albacea ha dejado de informar a la peticionaria sobre el estado de los bienes del caudal relicto de la causante, aún no ha rendido un inventario de bienes y nunca ha rendido un informe trimestral sobre las cuentas del albaceazgo.

En cambio, la recurrida se opuso a la expedición del auto de *certiorari*, toda vez que el proceso *ex parte* culminó con la expedición de las cartas testamentarias.

Tras analizar detenidamente el trámite procesal del caso y los documentos unidos al apéndice, nos corresponde, como cuestión de umbral, auscultar si tenemos jurisdicción para atender el recurso, aun cuando ninguna de las partes invoque tal defecto.

Del trámite procesal antes consignado, y de los diversos escritos, surge diáfanamente que el 6 de marzo de 2019, el TPI emitió y notificó una *Resolución,* y expidió las cartas testamentarias a favor de la señora Fernández como albacea testamentario.

Como indicamos, en el trámite procesal, es el 30 de diciembre de 2024 —cinco años luego de expedidas las cartas— que la peticionaria presentó una moción de intervención para solicitar formar parte de los procedimientos como interventora con el propósito de vindicar sus derechos como legataria[31].

---

[30] *Vilanova et. al v. Vilanova et. al, supra,* pág. 858.
[31] *Íd.,* pág. 51.

La peticionaria nunca impugnó la idoneidad del albacea nombrado por el TPI dentro de los treinta días siguientes a la fecha de archivo en autos de la notificación de la resolución del 6 de marzo de 2019. Tampoco acudió a este foro intermedio dentro de dicho término para revisar la resolución final de ese procedimiento de jurisdicción voluntaria de expedición de las Cartas Testamentarias.

En virtud de lo apuntalado, colegimos que la peticionaria presentó tardíamente su recurso de *certiorari* ante este foro intermedio. El término jurisdiccional venció, a más tardar, el 5 de abril de 2019.

**IV.**

Por los fundamentos antes expuestos, ***desestimamos*** el recurso de *certiorari* por falta de jurisdicción, ante su presentación tardía.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto Concurre con la siguiente expresión: hubiera denegado expedir el recurso solicitado en tanto no advirtió pasión, parcialidad, perjuicio ni error manifiesto en la determinación del TPI al determinar que el remedio solicitado por la peticionaria debía hacerse mediante pleito independiente.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones