ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| ELIEZER SANTANA BÁEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202500325 | *Revisión Judicial* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>B-215-25<br><br>Sobre: Solicitud de Indulto Presidencial |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de junio de 2025.

**I.**

Comparece por derecho propio y *en forma pauperis* el señor Eliezer Santana Báez (señor Santana Báez o Recurrente) mediante un recurso de revisión judicial. El señor Santana Báez es miembro de la población correccional en el Departamento de Corrección y Rehabilitación (DCR) y extingue varias condenas por la violación a estatutos penales de Puerto Rico. Junto a su recurso, el Recurrente unió una *Solicitud y declaración para que se exima de pago de arancel por razón de indigencia*, la cual examinamos y damos por aprobada.

Del expediente que revisamos se desprende que, el 27 de enero de 2025,[1] el señor Santana Báez instó una *Solicitud de Remedio Administrativo* ante la División de Remedios Administrativos (DRA).[2] En ésta, inquirió por la asistencia del ente administrativo para presentar una petición de indulto ante el presidente de los Estados Unidos.[3] Surge del documento que el Recurrente había realizado la

---

[1] Suscrita por el evaluador el 5 de febrero de 2025.
[2] Véase, segundo anejo del Apéndice.
[3] En su parte pertinente, el Artículo II, *Rama Ejecutiva*, Sección 2, de la Constitución de Estados Unidos dispone: "El presidente [...] tendrá facultad para suspender la ejecución de sentencias y para conceder indultos por delitos contra los Estados

misma solicitud a la Junta de Libertad bajo Palabra (JLBP). Por sus dichos, la JLBP indicó que únicamente interviene en clemencias a nivel estatal. Al respecto, el señor Santana Báez apuntó:

> … cosa que se aparta de la pauta del burocrático Tribunal Supremo de PR, por cuanto dispuso que, en *Sánchez Valle*,[4] que la autoridad en primigenia de [Puerto Rico] emana del poder del Congreso de [Estados Unidos], por lo que los delitos cometidos en esta jurisdicción son de arraigo federal, de modo que, el presidente sí tiene autoridad para indultarme o no y decidir sobre mi petición.
> .    .    .    .    .    .    .    .

Añadió que la negativa de la JLBP incidía sobre su igual protección de las leyes.

El 7 de febrero de 2025, notificada el día 14 siguiente, la DRA emitió su *Respuesta*:[5]

> Le anejo copia de lo relacionado a la petición de clemencias ejecutivas conforme a los privilegios que concede el gobernador de [Puerto Rico] en virtud del Art. IV, Sección 4, de la Constitución de [Puerto Rico], cometidos en violación de las leyes de [Puerto Rico]. Espero que le sirva de ayuda para su proceso de indulto.
>
> En relación a la solicitud de indulto ante el presidente de los Estados Unidos, conforme a la página del Departamento de Justicia Federal, Oficina de Indultos, dice que la Constitución de los Estados Unidos concede al presidente la autoridad para otorgar clemencia por un delito "federal". El presidente no puede otorgar clemencia por un delito estatal o local. Le recomendamos que dialogue al respecto con su técnico de servicios sociopenal porque **usted no puede peticionar un indulto a través de la División de Remedios Administrativos**. (Énfasis nuestro).

Insatisfecho, el Recurrente instó una *Solicitud de Reconsideración*.[6] Allí, reprodujo similares argumentos en alusión al caso *Sánchez Valle*. La DRA acogió el recurso.[7]

El 8 de mayo de 2025, la DRA emitió una *Resolución*,[8] en la que determinó probados los siguientes hechos:

---

Unidos, salvo en casos de residencia. La frase *delitos contra Estados Unidos* se refiere a crímenes que violan las leyes federales de los Estados Unidos.

[4] En referencia a *Pueblo v. Sánchez Valle,* 192 DPR 594 (2015) y a *Puerto Rico v. Sánchez Valle,* 579 U.S. 59 (2016).

[5] Véase, primer anejo del Apéndice.

[6] Véase, tercer anejo del Apéndice.

[7] Véase, cuarto anejo del Apéndice.

[8] Véase, quinto anejo del Apéndice.

1. El recurrente presento *Solicitud de Remedios Administrativos* el 5 de febrero de 2025 ante la Evaluador de Remedios Administrativos, Maribel García Charriez de la Oficina de Bayamón. En su escrito solicita asistencia para presentar petición de indulto ante el presidente de Estados Unidos.

2. El 7 de febrero de 2025 la Sra. Maribel García Charriez de la Oficina de Bayamón realiza respuesta al miembro de la población correccional.

3. Se le entrega respuesta al recurrente el 14 de febrero de 2025.

4. El 21 de marzo de 2025, el recurrente inconforme con la respuesta emitida, presentó *Solicitud de Reconsideración* ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que no está de acuerdo con la respuesta recibida.

5. Se acoge petición de reconsideración el 4 de abril de 2025.

En esencia, en el dictamen se explicó **el propósito de la DRA y los confines de su jurisdicción**. Además, se orientó al señor Santana Báez sobre que las solicitudes de clemencias ejecutivas o indultos presidenciales eran gestiones que debían ser realizadas por el Recurrente por derecho propio o mediante representación legal privada. Se enfatizó que el DCR únicamente estaba facultado para proveer los documentos atinentes. Con relación a los indultos presidenciales, se reiteró lo esbozado en la *Respuesta*, acerca de que el primer ejecutivo estadounidense sólo otorga indultos en casos de sentencias a nivel federal. Así, pues, en reconsideración, si bien se revocó la *Respuesta* impugnada ante sí, el ente administrativo no emitió un fallo dispositivo desestimatorio por falta de jurisdicción.

Inconforme todavía, el señor Santana Báez acudió oportunamente ante nos y señaló la comisión del siguiente error:

Erró el DCR al disponer no concederme la oportunidad de peticionar mi solicitud de indulto ante el presidente de [Estados Unidos] ya que mi delito fue sometido en la jurisdicción de [Puerto Rico], cuya fuente última de autoridad proviene del Congreso federal de [Estados Unidos], por lo que los delitos aquí cometidos son de origen federal por cuanto la autoridad en primigenia de [Puerto Rico] proviene del Congreso federal; por lo que al [Puerto Rico] negarme a mí la opción de peticionar mi indulto ante el presidente de [Estados Unidos], eso sí es inconstitucional e ilegal privarme de realizar dicha solicitud a la luz de las leyes de [Estados Unidos].

En armonía con la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7(B)(5), mediante la cual este foro revisor puede "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos", ello "con el propósito de lograr su más justo y eficiente despacho", eximimos a la parte recurrida de presentar su alegato en oposición.

## II.

### A.

Revisamos la *Resolución* en el caso del epígrafe, al palio del Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, *Ley de la judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.* (Ley Núm. 201-2003), el cual dispone en lo atinente que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas". 4 LPRA sec. 24u; además, Art. 4.006 de la Ley Núm. 201-2003, 4 LPRA sec. 24y. En consonancia, la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.*, establece un procedimiento uniforme de revisión judicial a la acción tomada por una agencia de Gobierno al adjudicar un caso. En particular, la Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el alcance de la revisión judicial, estatuye que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho.

Mediante la revisión judicial, esta curia debe evaluar que la decisión administrativa encuentre apoyo en la evidencia sustancial

que obre en la totalidad del expediente administrativo. El concepto *evidencia sustancial* se ha definido como aquella "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953), refrendados en *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019). Por ello, el *expediente administrativo*, por su parte, constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la revisión judicial ulterior. Sec. 3.18 de la LPAUG, 3 LPRA sec. 9658; *Graciani Rodríguez v. Garaje Isla Verde*, *supra,* pág. 128. Por igual, **examinamos que el ente gubernamental haya realizado una aplicación o interpretación correcta de las leyes o reglamentos que se le ha encomendado administrar**. Finalmente, auscultamos que el organismo haya actuado dentro de los parámetros de su ley habilitadora, no de forma arbitraria, irrazonable ni haya lesionado derechos constitucionales fundamentales. Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016).

### B.

El *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional* de 4 de mayo de 2015, Reglamento Núm. 8583, crea la División de Remedios Administrativos. En la Regla VI, la normativa citada define los contornos específicos de la jurisdicción del ente administrativo; así como los asuntos en los que no tendrá autoridad para intervenir.

> 1. La División **tendrá jurisdicción** para atender toda Solicitud de Remedio radicada por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre extinguiendo sentencia y que esté, relacionada directa o indirectamente con:
>
> a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar

físico, mental, en su seguridad personal o en su plan institucional.

b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.

c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad".

d. Alegaciones de violencia sexual por parte de un miembro de la población correccional conforme "Prison Rape Elimination ACT" (PREA) (115.51a, d, 115.52-b1, b2, b3).

2. La División **no tendrá jurisdicción** para atender las siguientes situaciones:

a. Cuando no haya agotado el trámite administrativo concedido por otros reglamentos, excepto que la solicitud se refiera al incumplimiento del trámite correspondiente ante aquel organismo.

b. Solicitudes de Remedios suscritas por un miembro de la población correccional en representación de otros miembros de la población correccional en la misma solicitud. Excepto cuando se refiera a reportar confidencias de cualquier tipo de violencia sexual en el entorno correccional.

c. Cuando se trate de impugnar una orden o decisión de cualquier organismo administrativo del Estado Libre Asociado de Puerto Rico o de un Tribunal de Justicia.

d. **Controversias relacionadas con las decisiones emitidas por la Junta de Libertad Bajo Palabra, excepto que la Solicitud de Remedios se refiera al incumplimiento del área concernida de rendir los informes o llevar a cabo unas acciones o incurrir en omisiones de obligaciones impuestas por el ordenamiento jurídico vigente**.

e. Cuando se impugne una decisión emitida por algún comité conforme a los reglamentos aprobados, según dispone la Ley de Procedimiento Administrativo Uniforme, excepto que la Solicitud de Remedio se refiera al incumplimiento del trámite correspondiente impuesto por un tribunal.

f. Cuando se trate de reclamaciones por accidentes del trabajo o de vehículos de motor, las cuales serán manejadas según la Ley de la Corporación del Fondo del Seguro del Estado y la Ley de Administración de Compensaciones por Accidentes de Automóviles, excepto que la solicitud se refiera al incumplimiento por parte del Departamento de Corrección y Rehabilitación de llevar a los miembros de la población correccional a recibir los servicios iniciales o de seguimiento.

g. **Cualquier otra situación que no cumpla con las disposiciones del presente Reglamento para la radicación de Solicitudes de Remedios**. (Énfasis nuestro).

Por virtud de lo anterior, la Regla XIII (5) del Reglamento Núm. 8583, faculta al evaluador para **desestimar** ciertas solicitudes, incluyendo aquellas "[p]or falta de jurisdicción, según se define en la Regla VI de este Reglamento".

**III.**

En la presente causa, el señor Santana Báez alega que, de conformidad con la decisión adoptada en *Pueblo v. Sánchez Valle*, 192 DPR 594 (2015), refrendada en *Puerto Rico v. Sánchez Valle*, 579 U.S. 59 (2016), el presidente de los Estados Unidos tiene facultad para atender su petición de indulto. Arguye que la JLBP le negó ese derecho. Por ende, nos solicita que le ordenemos a dicho ente administrativo a referir su petición de indulto al presidente de los Estados Unidos.

Como se sabe, las referidas decisiones jurisprudenciales pautaron que la fuente de poder para propósitos de la cláusula de doble exposición[9] lo es el Congreso de los Estados Unidos. En consecuencia, no se puede procesar en los foros locales o estatales a una persona que haya sido absuelta, convicta o expuesta a serlo por el mismo delito en los tribunales federales. Ahora bien, el Recurrente no sólo pretende la extensión de la aplicación de las opiniones vinculantes a un ámbito distinto (el poder de conceder indultos, según conferidos al ejecutivo estadounidense por la Constitución federal); sino que la DRA interceda para que obligue a la JLBP a procesar la petición de clemencia.

Ciertamente, de conformidad con el Reglamento Núm. 8583, *supra,* la cuestión no se encuentra contemplada entre los asuntos para los cuales la DRA tiene autoridad para intervenir. Nótese que el organismo no ostenta jurisdicción sobre aquellas controversias relacionadas con las decisiones emitidas por la JLBP ni tampoco este

---

[9] Véase, Artículo II, Sección 10 de la Constitución de Puerto Rico y Enmienda V de la Constitución de Estados Unidos.

caso versa sobre alguna omisión de la JLBP por dejar de ejercer obligaciones impuestas por el ordenamiento jurídico vigente. La JLBP no gestiona las clemencias de los confinados, sino que brinda asesoría a la gobernadora de Puerto Rico en la concesión de indultos por delitos cometidos en violación a las leyes de Puerto Rico, al amparo del Artículo IV, Sección 4 de nuestra Constitución. Véase, Art. 3 (d) de la *Ley de la Junta de Libertad Bajo Palabra*, 4 LPRA sec. 1503(d). Por lo tanto, la DRA no tiene facultad para ordenar a la JLBP a "reorganizarse para crearme esa apertura"[10] como lo sugiere el Recurrente.

Somos del criterio que, en su *Resolución*, la DRA orientó correctamente al Recurrente. Primero, reiteró que el presidente de los Estados Unidos sólo puede otorgar clemencias a aquellos convictos sentenciados por delitos estatuidos en leyes federales, no estatales. Segundo, dirigió al señor Santana Báez a gestionar por derecho propio o mediante representación legal la petición de indulto. Empero no desestimó la causa administrativa por falta de jurisdicción, al amparo de su reglamentación.

Como se sabe, la *jurisdicción* es el poder o autoridad que ostentan los tribunales para considerar y decidir los casos y las controversias ante su atención. *Beltrán Cintrón v. ELA*, 204 DPR 89, 101 (2020), que cita a *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019). A esos efectos, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, ya que no tenemos discreción para asumirla si no la hay. Por ello, las cuestiones relativas a la jurisdicción son privilegiadas y, como tal, deben atenderse y resolverse con preferencia y prontitud. La falta de jurisdicción no es susceptible de ser subsanada. Un dictamen emitido sin jurisdicción es nulo en Derecho y, por lo tanto, inexistente. En consecuencia, una vez un tribunal

---

[10] Véase, *Petición de Revisión Judicial*, pág. 9.

determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la inmediata desestimación del recurso apelativo de conformidad con lo ordenado por las leyes y los reglamentos. *S.L.G Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882-883 (2007); *Torres Alvarado v. Madera Atiles*, *supra*, págs. 499-500; además, *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014); *Suffront v. A.A.A.*, 164 DPR 663, 674 (2005).

Por consiguiente, luego de evaluar la totalidad del expediente administrativo, concluimos que, al igual que la DRA, adolecemos de jurisdicción para dirimir la cuestión planteada. En vista de ello, procede la desestimación del presente recurso de conformidad con la Regla 83 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83. Por virtud de la aludida norma, este foro intermedio está facultado para, a iniciativa propia o a petición de parte, desestimar un recurso cuando carecemos de jurisdicción.

## IV.

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, desestimamos el recurso de revisión judicial, por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones